## 10480

### HESTER v. ROBERTS.

#### (103 S. E. 773.)

BROKERS—EVIDENCE HELD INSUFFICIENT TO SHOW CONTRACT OR ACCEPTANCE OF SERVICES.—Evidence *held* insufficient to show there was any contract between the parties, or that defendant owner knowingly accepted broker's services.

Before RICE, J., Greenville, Fall term, 1918. Reversed.

Action by H. M. Hester against Mary A Roberts for commissions on sale of real estate. Judgment for defendant, and a new trial granted; from which defendant appeals.

The order granting a new trial was as follows:

The above stated cause was tried before me at the Fall, 1918, term of Court for said county, and resulted in a verdict for the defendant. It comes before me now on a motion for a new trial.

Hester claimed that he was entitled to commissions on a sale of real estate belonging to the defendant in the city of Greenville. Mrs. Roberts paid the said commissions to another agent, with whom she said she had listed the property. The evidence showed conclusively that the sale of the property was effected through the efforts of Hester. So far as could be ascertained by what appeared at the trial, the other agent, Goldsmith, had nothing whatever to do with the sale, except to close up the deal after Hester had brought the purchaser and seller together. It was unquestionably

through the efforts of Hester that the property was sold.   I
don't think there is any doubt that Mrs. Roberts knew that
Hester was a real estate agent, and if she did not intend to
pay him for his work she should have so informed him, and
refused to accept his services.

It is seldom that I set aside the verdict of a jury, but I
feel that there has been a gross miscarriage of justice in this
case, and that in all good conscience I should set aside this
verdict and send the case back for a new trial; and it is so
ordered.

*Messrs. B. A. Morgan* and *J. J. McSwain,* for appellant,
cite: *Consent by owner to rendition of service by broker
does not create an implied contract, and entitle the broker
to commissions:* 19 Cyc. 219; 29 S. W. 438; 56 N. W. 40.
*Or if owner does not know broker is acting for him:* 45
Pac. 524; 28 S. W. 681; 36 S. W. 805.   *New trial granted
on error of law is appealable:* 107 S. C. 501.

*Messrs. Haynsworth & Haynsworth,* for respondent, cite:
*Order granting new trial will not be disturbed on appeal
unless based on error of law, or abuse of discretion:* 95 S. C.
471, 475.   *Where one under no legal or moral obligation,
renders services to another at his request or within his
knowledge and acquiescence, the law raises implied promise
of compensation:* 34 S. C. 255; 70 S. C. 377; 74 S. C. 221; 2
Elliott Conts., secs. 1363, 1358; Williston's Wald's Pollock
on Conts. 11; 40 Cyc. 2808-9; 121 Pac. 156; 80 S. C. 341.
*On appeal from order of new trial, upon affirmance, the
Supreme Court shall render judgment absolute for defend-
ant:* Sec. 11, subd. D2, Code Proc.; 98 S. C. 3.

July 26, 1920.

The opinion of the Court was delivered by MR. JUSTICE
GAGE.

The plaintiff sued defendant (1) upon an alleged contract, and (2) upon the value of his service, which she is alleged to have knowingly accepted at his hands. The verdict was for defendant. The Court set the verdict aside. Let the order thereto be reported. It cannot be sustained.

The plaintiff is in the business of selling real estate. The defendant owned a house and lot in Greenville. The same was conveyed by the defendant to Mrs. Pitts for $8,500. The plaintiff's contention is that he effected the sale, and he sues for his commissions thereabout. There is no testimony (1) that the defendant ever made a contract, express or implied, with the plaintiff to sell her house; and there is no testimony (2) that the defendant knew that the plaintiff was exerting himself thereabout, and that she accepted such service.

The only testimony which squints at the first assumption is that of the plaintiff, where he testified that he phoned to the Roberts house, and a daughter of the defendant answered him thus: "When I first telephoned there, Miss Roberts said she would ask her mother in regard to my handling the property, and then she came to the phone and said, 'Mother says that it has been with Mr. Goldsmith, but we think that the time is out, and we want you to sell the place.'"

And again, on another occasion, the plaintiff phoned to the Roberts home, and a daughter answered him thus: "One girl answered the phone, and said, 'Let me call my older sister;' and then the other sister came to the phone, and I told her about wanting to sell the property, if it was for sale, and she went back and talked to her mother, and said, 'Mother says that we want to sell the place for $8,500. It has been listed, but we think that the time is out.' She said, 'I will ask mother about the matter;' and, after she went and talked to her, she came back and said, 'Mother says we

will pay you for selling the place, because we are anxious to move to Alabama.' "

At the most, the answer of the daughters was hearsay, for there is no testimony that the daughters were authorized expressly or impliedly to speak for their mother, or that the mother ever ratified the daughters' action. There is no testimony which tends to prove that the defendant had knowledge of the plaintiff's activities thereabout and accepted them.

For such knowledge the plaintiff only cites the testimony of the defendant on cross-examination. It is this:

Cross-examination by Mr. Haynsworth: "I never heard of Mr. Hester until this sale of the furniture. I had never met him until after the place was sold. His name was never mentioned in connection with the sale. I was away when Mr. Hester went to these girls. Of course, it was described, and there was a letter when I came back from Mrs. Pitts, wanting to rent my house, and that she would take care of my furniture. Mrs. Pitts wrote and asked if Mr. Hester had anything to do with the selling of the property a few days after I got home. I was born and raised in Griffin, Ga. The girls were talking it over, and I got this letter from Mrs. Pitts, is the first time I heard Hester mentioned."

But in the same connection the witness testified as follows: "Mr. Roberts had left Greenville. I wrote him after I came home, and told him about the conversation Mr. Hester had with these girls. The girls told me, and I wrote to Mr. Roberts about the conversation, and Mr. Roberts wrote me back and said, 'Don't have anything to do with Mr. Hester.' "

So far from going to show that the defendant was accepting the service of the plaintiff, the testimony tends to show the contrary. There is no doubt about the law; the case depends on the facts, and they are dead against the plaintiff..

The order below is reversed.